UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ARUANNO,<br><br>Plaintiff,<br><br>v.<br><br>ATTORNEY GENERAL OF NEW JERSEY,<br><br>Defendants. | Civil Action No. 21-11071 (MCA)<br><br>MEMORANDUM OPINION |

This matter has been opened to the Court by Plaintiff's filing of an application for a temporary restraining order ("TRO"), ECF No. 17, an Amended Complaint, ECF No 18, and an application to proceed *in forma pauperis* ("IFP application"). ECF No. 19. For the reasons stated herein, the Court grants the IFP application,[1] denies the TRO application, dismisses the federal claims in the Amended Complaint pursuant to its screening authority under § 1915(e)(2)(B), and declines supplemental jurisdiction over Plaintiff's state law claims. Within 45 days, Plaintiff may submit a second amended complaint or a written request to remand this matter to state court.

I.     RELEVANT BACKGROUND AND FACTUAL ALLEGATIONS

By way of background, Plaintiff originally filed this action in state court, and the Attorney General of the State of New Jersey removed the action on or about May 11, 2021. *See* ECF No. 1. The Summons attached to the Notice of Removal listed the Attorney General as the sole Defendant in this matter. The caption of the original complaint, however, listed "John Does

---

[1] The matter was removed from state court, and the filing fee was paid by the removing Defendant; however, Plaintiff has submitted the IFP application for purpose of service, should he state any federal claims.

1-50, Department of the New Jersey Treasury, Commissioner Gary Lanigan, et. al." as Defendants.[2]  *See* Complaint at 1.  The Attorney General was not mentioned in the original complaint, and there were no allegations against the Attorney General.  In his letter dated December 11, 2021, Plaintiff stated that he did not sue the Attorney General.  *See* ECF No. 12.

The Court granted the motion to dismiss the original complaint in its entirety <u>without prejudice</u> as to the Attorney General because the original complaint contained no allegations against this Defendant.  *See* ECF No. 14.  The Court declined to address the other arguments presented by the removing Defendant and noted that the DAG did not remove the action on behalf of the Department of the Treasury, DHS, and/or Gary Lanigan, or enter an appearance on behalf of any of the named Defendants in this action.  *Id.*

The Court also provided Plaintiff with an opportunity to amend his Complaint to clarify the Defendants he wished to sue in this action and the federal and/or state law claims he sought to assert.  *See id.*  In particular, the Court told Plaintiff that if he knew the identities of the John Does 1-4, he should name them in his amended complaint.  *Id.*  The Court also directed Plaintiff to file an application to proceed *in forma pauperis* and provide a copy of his account statement if he sought to have the U.S. Marshals serve the Complaint on any unserved Defendants.  *Id.*  Finally, the Court notified Plaintiff that if he submitted an amended complaint, it would replace the original and become the operative pleading in this action.  *Id.*

Plaintiff subsequently submitted an Amended Complaint, an IFP application, and a request for a TRO.  ECF Nos. 18, 19, 17.  At this time, the Court grants his IFP application and screens the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[2] Another document submitted with the Notice of Removal lists "State of New Jersey, et al." in the caption.  *See* ECF No. 1 at 8.

Plaintiff's Amended Complaint alleges that he is housed at the Special Treatment Unit in Avenel, New Jersey and that the facility does not allow detainees to close their cell doors between the hours of 6:30am-10pm.  Amended Complaint at 2.  Outside the cells, there are pay phones, loud televisions, and detainees who are playing card games, eating, holding group meetings, and conducting reviews.  *Id.*  In the past, detainees have been permitted to request to shut their doors to reduce noise and theft; however, for the past two years in the South Unit, the Administration has refused to allow detainees to shut their doors, resulting in thefts and sexual assaults. Plaintiff alleges that the sexual assaults are generally "by the same assailants" and detainees are forced to house with those who assault them in violation of "keep separate" orders and other laws.  *Id.*

Plaintiff contends that that the "NJ Treasury Tort Section" has been notified by the Department of Human Services, the Public Defender, and detainees,[3] but has failed to act.  *Id.*

Plaintiff further alleges that on July 1, 2019, C/O Lynch opened Plaintiff's door and permitted John Doe 2, an SVP who has allegedly raped 10 "PRIPs" in the unit to enter Plaintiff's cell.  Plaintiff complained and asked to see the sergeant, but Lynch told Plaintiff to get away from the desk and he and John Doe 2 laughed.  *Id.* at 3.  There are no allegations John Doe 2 sexually assaulted Plaintiff or threatened to sexually assault him prior to this incident or during this incident, or that Lynch was aware of John Doe 2's history of assaulting other detainees.

On July 8, 2019, Plaintiff cell door was closed, and C/O Williams opened the door "creating more problems." *Id.*  According to Plaintiff, when Lynch and Williams refuse to let him keep his cell door closed in Plaintiff's absence, thefts or attempted thefts have occurred.  *Id.*

---

[3] Plaintiff refers to these detainees as "other Plaintiffs."

Specifically, Plaintiff has caught John Doe 2 coming out of Plaintiff's cell with his ice cooler. *Id.*

According to the Amended Complaint, C/O Valentin is partial toward three detainees, with whom he engages in inappropriate behavior," and he allows these three inmates to keep their doors closed. Valentin refuses to permit other detainees to keep their doors closed, which Plaintiff describes as a violation of equal protection. *Id.* at 3-4.

Plaintiff also alleges he contacted Gary Lanigan, but Lanigan was deliberately indifferent and took no action. Plaintiff also alleges there are other incidents "that will be addressed" once injunctive relief is provided. *Id.* at 3.

According to Plaintiff, on November 30, 2020, John Doe #2 assaulted a staff member by throwing items at him, was moved into a lockup area, and assaulted another staff member. After these assaults, John Doe 2 was criminally charged. *Id.* at 4. Plaintiff contends that the decision to criminally charge John Doe #2 only after he assaulted staff members constitutes deliberate indifference and violates equal protection because John Doe 2 was not criminally charged when he sexually assaulted other detainees. *Id.* at 4.

Plaintiff alleges that an unidentified sergeant told Plaintiff that if he wants his door closed, "don't come to prison" and "you should have stayed home". *Id.* at 4. Plaintiff alleges that another sergeant "made clear if his if his name were to appear [in a complaint] he would retaliate." *Id.* It appears that Plaintiff filed the TRO application, discussed below, due to these threats of retaliation.

Plaintiff also alleges that there are other residents similarly situated and that a resident by the name of Grushack has pursued similar claims in this District.[4] *Id.*

In his motion for a Temporary Restraining Order, Plaintiff contends that he has been threatened with retaliation by staff members. ECF No. 17. He asks not to be placed in isolation purportedly for his own safety where he would be denied his legal papers and property and more likely to become a victim of assault. *See id.*

## II.     STANDARD OF REVIEW

The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage, the Court accepts facts alleged in the pro se complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citing *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). The Court does not credit conclusory allegations. *Iqbal*, 556 U.S. at 678. Because Plaintiff is proceeding

---

[4] Plaintiff appears to refer to Grushack v. New Jersey Department of Corrections, Civil Action No. 21-623 (JMV).

pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

The Court liberally construes Plaintiff to assert civil rights violations pursuant to 42 U.S.C. § 1983, as well as state law tort claims. The Court begins with the federal claims.

Plaintiff's allegations about John Doe 2 implicate his Fourteenth Amendment right to reasonably safety. The Constitution imposes a general duty on prison officials to protect inmates from violence by other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state a Fourteenth Amendment claim for failure to protect, a prisoner must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer*, 511 U.S. 834); *see also Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Here, Plaintiff has not provided sufficient facts showing that C/O Lynch or C/O Williams knew of and disregarded an excessive risk to Plaintiff's safety by allowing John Doe 2 to enter Plaintiff's cell. There are insufficient facts to suggest that John Doe 2 presented a serious risk of harm to Plaintiff during the incidents on July 1, 2019 and July 8, 2019. Although C/O Lynch allowed John Doe 2 to enter Plaintiff's cell on July 8, 2019, there are no facts to suggest that Plaintiff was also inside his cell at the time or Plaintiff faced any threat of harm during this incident. C/O Williams also allegedly allowed John Doe 2 to enter Plaintiff's cell on July 8, 2019, but Plaintiff was not there. Plaintiff does not state a failure to protect claim based on attempted theft absent a threat to his health and safety. Moreover, Plaintiff pleads insufficient

facts to suggest that C/O Lynch and/or C/O Williams were aware of John Doe 2's history of sexually assaulting other detainees. Without facts showing that Lynch and Williams knew John Doe 2 presented a danger to all detainees or to Plaintiff in particular, these Defendants could not have acted with deliberate indifference. As such, the Court dismisses without prejudice the failure to protect claims against C/O Lynch and C/O Williams based on the July 1, 2019 and July 8, 2019 incidents.

Plaintiff also states in a conclusory manner that he notified Gary Lanigan, but he failed to act. This allegation is too conclusory to show that Lanigan was personally involved in any of the alleged wrongs described in the Amended Complaint. Instead, Plaintiff's allegations against Lanigan appear to be based on respondeat superior, which is not a valid basis for liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). Notably, Plaintiff fails to plead facts showing that that Lanigan acted with deliberate indifference, meaning that he consciously disregarded a serious risk to Plaintiff's safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."). Knowledge may be shown where the official has actual notice of the risk, *Nami v. Fauver*, 82 F.3d 63, 67–68 (3d Cir. 1996), or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus

must have known about it." *Farmer*, 511 U.S. at 842. Because Plaintiff has not pleaded facts showing that Gary Lanigan knew that Plaintiff, or detainees generally, faced a serious risk of harm from John Doe 2, the Court dismisses without prejudice the § 1983 claims against Gary Lanigan.

In the Amended Complaint, Plaintiff also alleges that other detainees have been assaulted by John Doe 2 and refers to these other detainees as "Plaintiffs" in this action.[5] Plaintiff contends that the decision to charge John Doe 2 only after he assaulted staff members amounts to deliberate indifference and/or an equal protection violation. As noted above, Plaintiff has not pleaded facts showing that any Defendants in this action knew that John Doe 2 was a threat to Plaintiff or all detainees due to his history of sexual assault and failed to protect him. Plaintiff cannot assert deliberate indifference or equal protection claims on behalf of <u>other detainees</u> who were allegedly assaulted by John Doe 2. It is well-established that "third parties lack standing to bring claims under § 1983 for violations of the constitutional rights of another." *Norcross v. Town of Hammonton*, Civ. No. 04–2536, 2006 WL 1995021, at *1 (D.N.J. July 13, 2006); *see also Estate of Andujar by Kincaide v. Cnty. of Cumberland*, No. 1:22-cv-06372(NLH-AMD), 2023 WL 4784214, at *11 (D.N.J. Jul. 27, 2023) ("Plaintiff lacks standing to assert claims of constitutional violations suffered by inmates and has failed to allege facts sufficient to show that [plaintiff] suffered a violation of his constitutional rights). To the extent Plaintiff is attempting to assert claims on behalf of other inmates, these claims are dismissed without leave to amend for lack of standing.

Plaintiff also alleges an equal protection violation against C/O Valentin. According to Plaintiff, Valentin allows certain detainees to keep their doors closed because he engages with

---

[5] Plaintiff's caption lists "similarly situated John/Jane Does 1-50."

inappropriate behavior with them, but Valentin does not allow other detainees to keep their doors closed.  The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.  To state a claim under the Equal Protection Clause, a plaintiff must allege that he has been treated differently due to his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly situated individuals and that this differential treatment was not rationally related to a legitimate state interest.  *Young v. Sewickley Twp.*, 160 F. App'x. 263, 266 (3d Cir. 2005) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)).  Under a "class of one" theory, a plaintiff may claim, in the absence of a fundamental right or membership in a suspect class, that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

  Here, Plaintiff states in a conclusory manner that Valentin has violated his right to equal protection of the law by engaging in inappropriate behavior with certain detainees and allowing those detainees to leave their doors closed while denying other detainees the ability to keep their doors closed.  The Amended Complaint, however, does not sufficiently allege that Plaintiff is a member of a protected class, that Plaintiff is asserting a fundamental right, or that Valentin intentionally treated Plaintiff differently from others similarly situated detainees without any rational basis for the difference in treatment.  For this reason, the Court dismisses without prejudice his equal protection claim against Valentin.

  The Court also dismisses without prejudice the § 1983 claims against the Commissioner of the New Jersey Treasury, who is listed in the caption, *see* ECF No. 18 at 1, because there are no allegations against this Defendant.

Plaintiff originally filed his complaint in state court and appears to refer to the notice requirement under the New Jersey Tort Claims Act. Plaintiff may be attempting to bring state law torts claims against some of the Defendants. Where a federal court has original jurisdiction over certain claims, it also has supplemental jurisdiction over all other related claims that form part of the "same case or controversy" under Article III of the United States Constitution. 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (same). Title 28 U.S.C. § 1367 (c)(3) provides that district courts "may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction." *See also Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (same). As relevant here, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original). "Additionally, the federal court should be guided by the goal of avoiding needless decisions of state law ... both as a matter of comity and to promote justice between the parties." *Gibbs*, 383 U.S. at 726. Here, the Court has dismissed the federal claims at an early stage and declines supplemental jurisdiction over any potential state law claims at this time.[6]

Finally, Plaintiff has filed an application for a TRO based on threats of retaliation by unidentified Defendants who are named or could be named in this lawsuit. ECF No. 17. A party seeking preliminary injunctive relief "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

---

[6] If Plaintiff submits a second amended complaint, he is free to reassert his state law claims. If Plaintiff states one or more federal claims, the Court will address the state law claims at that time.

equities tips in his favor, and that an injunction is in the public interest.'" *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).  Here, Plaintiff has not shown that he is likely to succeed on the merits of his retaliation claim, or that he is likely to suffer irreparable harm in the absence of preliminary relief.  To succeed on the merits of a First Amendment retaliation claim, Plaintiff must show that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the adverse action.  *See Watson v. Rozum*, 834 F.3d 417 (3d Cir. (2016).  Although Plaintiff claims that unidentified Defendants threatened him with retaliation if he names them in a lawsuit, he has not provided any facts suggesting that any prison officials have retaliated against him for filing the instant lawsuit or the circumstances of that retaliation. And he has not even identified the specific individuals threatening him.  Moreover, Plaintiff suggests that the acts of retaliation will occur if his complaint is served on Defendants, but the Court has dismissed the federal claims at screening for failure to state a claim for relief.  For these reasons, the request for a TRO is denied without prejudice.

      Plaintiff may submit an all-inclusive second amended complaint within 45 days if he believes he can cure the deficiencies in some or all of his federal claims.[7]  Alternatively, if Plaintiff wishes to proceed solely on his state law tort claims in state court, he shall notify the Court within 45 days, and the Court will remand this matter to state court.  If Plaintiff fails to elect either option within 45 days, the dismissal of the federal claims will automatically convert to a dismissal with prejudice.  An appropriate Order follows.

---

[7] If Plaintiff chooses to submit a second amended complaint, it will replace his current complaint and should include all the facts Plaintiff wishes the Court to consider.

9/19/23

_____
Hon. Madeline Cox Arleo, U.S.D.J.